AGEE, Admx., Appellant,

v.

BUTLER COUNTY et al., Appellees.

[Cite as *Agee v. Butler Cty.* (1991), 72 Ohio App.3d 481.]

Court of Appeals of Ohio,
Butler County.

No. CA90–09–186.

Decided Feb. 11, 1991.

*Kircher & Phalen* and *Robert B. Newman,* for appellant.

*Crabbe, Brown, Jones, Potts & Schmidt* and *Brian E. Hurley,* for appellees.

*Per Curiam.*

Plaintiff-appellant, Judy Agee, administratrix of the estate of Timothy Lee Turner ("Agee"), appeals an entry by the Butler County Court of Common Pleas granting summary judgment in a wrongful death action to defendants-

appellees, Butler County, Sheriff Richard Holzberger, and other officers and deputies ("the county").

On December 29, 1988, Timothy Lee Turner committed suicide while in the custody of the county. Turner, seventeen, had been bound over by the juvenile division of the common pleas court to be tried as an adult on a charge of receiving stolen property. In the negligence suit filed in October 1989, Agee alleged that while Turner was incarcerated in the Butler County Jail, he had repeatedly threatened suicide to jail personnel, who did nothing to prevent his death. In addition, Turner's cellmate had apparently stopped Turner from carrying out his suicide plan. Upon the cellmate's release, however, Turner's suicide was successful. Jail personnel found him in his cell shortly after his death, hanging from a bed sheet.

In June 1990, the county moved for summary judgment in the negligence action, arguing that under the doctrine of sovereign immunity as promulgated in R.C. Chapter 2744, the county could not be liable for Turner's death. The trial court granted this motion in August 1990, from which Agee now appeals, assigning one error:

"The trial court erred to the prejudice of the plaintiff-appellant in granting defendants' motion for summary judgment."

Agee raises two issues under this assignment, arguing that R.C. 2744.-02(B)(4) is unconstitutional on both due process and equal protection grounds.

In 1982, the Ohio Supreme Court abrogated the doctrine of sovereign immunity as it had been judicially created, holding that the defense was unavailable to a municipal corporation sued for the negligent operation of a sewage treatment plant. *Haverlack v. Portage Homes, Inc.* (1982), 2 Ohio St.3d 26, 30, 2 OBR 572, 575, 442 N.E.2d 749, 752. Acting in response to the perceived impact the loss of the sovereign immunity doctrine would have upon the state budget, the legislature adopted R.C. Chapter 2744, entitled the "Political Subdivision Tort Liability Act," which proposed to statutorily reinstate sovereign immunity. Note, The Ohio Political Subdivision Tort Liability Act: A Legislative Response to the Judicial Abolishment of Sovereign Immunity (1986), 55 U.Cin.L.Rev. 501, 502. R.C. Chapter 2744 sets forth the general rule of immunity, with certain defined exceptions. R.C. 2744.02(A)(1) states, in part:

"Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."

Thus, a political subdivision is immune from liability unless R.C. Chapter 2744 provides otherwise. See *Grange Mut. Cas. Co. v. Columbus* (1989), 49 Ohio App.3d 50, 52, 550 N.E.2d 524, 526.

R.C. 2744.02(B)(4), at issue herein, provides an exception to the sovereign immunity rule, but simultaneously exempts detention facilities from that exception:

"(B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:

" * * *

"(4) Political subdivisions are liable for injury, death, or loss to persons or property that is caused by the negligence of their employees and that occurs within or on the grounds of buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses, *but not including jails, places of juvenile detention, workhouses, or any other detention facility, as defined in section 2921.01 of the Revised Code.*" (Emphasis added.)

The statute thus distinguishes between negligent acts occurring in jails and negligent acts occurring on other types of property used in connection with governmental activities. Agee argues that R.C. 2744.02(B)(4) is unconstitutional because it deprives prisoners of a property right to seek redress and because it creates a distinction unrelated to any state interest. We disagree.

"When the state consents to be sued, it may qualify and draw perimeters around that granted right without violating due process or equal protection." *Grange, supra,* 49 Ohio App.3d at 52, 550 N.E.2d at 526. In analyzing Agee's argument that R.C. 2744.02(B)(4) is unconstitutional, we must use the rational-basis test, since neither a suspect class nor a fundamental right is implicated. *Menefee v. Queen City Metro* (1990), 49 Ohio St.3d 27, 29, 550 N.E.2d 181, 182–183. Under rational-basis analysis, a statutory classification is constitutional if it bears a rational relationship to a legitimate state interest. *Id.*

Agee first asserts that R.C. 2744.02(B)(4) deprives prisoners of a property right to seek redress in the open courts of this state. We reiterate that under the doctrine of sovereign immunity, as statutorily preserved in Ohio, it is "the exercise of the state's right to circumscribe or limit the power given to persons to sue the state for damages." *Grange, supra,* 49 Ohio App.3d at 52–53, 550 N.E.2d at 526–527. Thus, while Agee arguably does

have a right to seek redress in Ohio courts, the doctrine of sovereign immunity as set forth in R.C. Chapter 2744 exposes the state to liability only in certain circumstances. Where there is no state-created right of action, there is no deprivation of a property interest which could constitute a due process violation. See *Grange, supra; Salazar v. Ohio Civil Rights Comm.* (1987), 39 Ohio App.3d 26, 30, 528 N.E.2d 1303, 1307. We thus conclude that R.C. 2744.02(B)(4) survives due process analysis.

With regard to Agee's equal protection argument, R.C. 2744.02(B)(4) will be upheld unless the classification is "wholly irrelevant to achievement of the state's objective." (Emphasis deleted.) *Menefee, supra,* citing *McGowan v. Maryland* (1961), 366 U.S. 420, 425, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 398. We find that the state's purpose in excluding jails and other detention facilities from its provision permitting political subdivision liability for tortious conduct upon governmental premises is identical to the purpose recognized behind enactment of the entire sovereign immunity chapter: to "preserv[e] the financial soundness of [the state's] political subdivisions." *Menefee, supra.*

Liability for acts or omissions occurring upon detention facility premises could have a severe economic impact upon the political subdivisions operating such facilities. It is well recognized that places of detention, by their very nature, cannot be made completely safe, either for prisoners or for personnel and visitors.

This is not to deny that operators of detention facilities have a duty to make such places as safe as possible. But we believe the express exclusion of detention facilities from the list of premises on which the state will permit liability is meant to reflect the inherent dangers of those facilities and the inability of the state, or its political subdivisions, to ensure the safety of those within the confines of such facilities.

Agee argues that prisoners have been singled out for disparate treatment under R.C. Chapter 2744, thus reflecting an effort on the part of the legislature to deny claims which the legislature considered frivolous. However, the state's exclusion of detention facilities in the context of R.C. 2744.02 suggests a purpose relevant to the location of the injury rather than to the status of the injured. The statute would immunize the political subdivision not only from the wrongful death action of a suicide victim prisoner, but also from liability for injury to a guard attacked by a prisoner or for injury to a visitor negligently hit by a prison delivery truck.

Finally, Agee incorrectly suggests that only prisoners are treated dissimilarly under R.C. Chapter 2744. In *Menefee, supra,* the Ohio Supreme Court upheld the constitutionality of R.C. 2744.05(B), which limited the subrogation

rights of insurance companies to suits not involving political subdivisions. The court determined that this statutory classification was rationally related to a legitimate state interest. *Id.* The court's decision in *Menefee* suggests that R.C. Chapter 2744, as a whole, is constitutional.

Because we find that R.C. 2744.02(B)(4) is rationally related to a legitimate state interest, we hold that it is a valid statutory limit on the liability of political subdivisions. In so holding, we are in agreement with at least one other Ohio appellate district. See *Phipps v. Dayton* (1988), 57 Ohio App.3d 11, 566 N.E.2d 181. Agee's assignment of error is overruled.

The assignment of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, affirmed.

Costs to be taxed in compliance with App.R. 24.

*Judgment affirmed.*

JONES, P.J., KOEHLER and WILLIAM W. YOUNG, JJ., concur.